UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARL DANNER,

       Plaintiff,                          Hon. Janet T. Neff

v.                                          Case No. 1:09-CV-1115

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 38 years of age at the time of the ALJ's decision. (Tr. 24-25). He successfully completed high school and worked previously as an automobile mechanic. (Tr. 24, 75-80, 306).

Plaintiff applied for benefits on August 19, 2004, alleging that he had been disabled since January 8, 2004, due to a back injury, neurological damage, and vision problems. (Tr. 15, 65-66). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 26-61). On July 19, 2007, Plaintiff appeared before ALJ B. Lloyd Blair, with testimony being offered by Plaintiff and vocational expert, Heather Benton. (Tr. 301-39). In a written decision August 23, 2007, the ALJ determined that Plaintiff was not disabled. (Tr. 15-25). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 4-8). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

**RELEVANT MEDICAL HISTORY**

On January 20, 2004, Plaintiff was examined by Dr. Theodore delaCruz. (Tr. 95-98). Plaintiff reported experiencing "persistent" low back pain which radiated into his right lower extremity. (Tr. 95). Plaintiff walked with a "normal" gait and straight leg raising was "barely positive." (Tr. 97). An examination of his back revealed tenderness and "very mild limitation" in range of motion. (Tr. 97). An MRI examination revealed disc herniations at L4-5, L3-4, and L2-3. (Tr. 95).

On February 10, 2004, Plaintiff underwent microlaminectomy surgery at L3-4 and L4-5, performed by Dr. Lawrence Mysliwiec. (Tr. 103-04). On February 19, 2004, Plaintiff was examined by Dr. Mysliwiec. (Tr. 120). Plaintiff reported that he was experiencing "only occasional fleeting discomfort in his leg and this is much improved." (Tr. 120). X-rays revealed "appropriate L3-4 and L4-5 laminotomies" and straight leg raising was negative. (Tr. 120). On March 4, 2004, Plaintiff reported that he was doing better. (Tr. 118). On March 25, 2004, Plaintiff reported that he "is making progress." (Tr. 117). On April 29, 2004, Plaintiff reported that his back pain was "improved." (Tr. 110).

On June 7, 2004, Plaintiff was examined by John Jerome, Ph.D. with the Pain Clinic. (Tr. 142). Dr. Jerome reported that Plaintiff was "active in physical therapy" and doing "fairly well." (Tr. 142). Plaintiff reported that he "has been helping the neighbor sweat some pipes together to see if he could do some reaching and twisting." (Tr. 141). The doctor indicated that it was "very realistic" to expect that Plaintiff would able to return to work in an occupation other than auto mechanics. (Tr. 142).

4

On July 5, 2004, Plaintiff reported to Dr. Jerome that he "has been doing some computer repair and may find this as a part-time job." (Tr. 140).

On July 24, 2004, Plaintiff was examined by Dr. Linda Angell. (Tr. 177). Plaintiff reported that he had experienced double vision "since childhood," but can maintain single vision by tilting his head to the left. (Tr. 177). Plaintiff was diagnosed with diplopia,[1] right hypertropia,[2] and a small exotropia.[3] (Tr. 177). The doctor concluded that Plaintiff was a good candidate for eye muscle surgery. (Tr. 177).

On August 9, 2004, Plaintiff reported that his unemployment insurance "has run out" and that he was filing for Social Security disability benefits. (Tr. 139). On September 13, 2004, Plaintiff reported his back pain as 5/10. (Tr. 211). On September 20, 2004, Dr. Jerome reported that Plaintiff "has not started taking" his prescribed antidepressant medication. (Tr. 137). On October 29, 2004, Plaintiff reported his back pain as 4/10. (Tr. 208).

On November 24, 2004, Plaintiff was examined by Steve Geiger, Ph.D. (Tr. 152-55). Plaintiff reported that he was unable to work due to his vision and back impairments. (Tr. 152). Plaintiff also reported that he experiences "severe" depression. (Tr. 152). Plaintiff appeared depressed, but the results of a mental status examination were otherwise unremarkable. (Tr. 154-

---

[1] Diplopia refers to double vision. *See* The Free Dictionary, available at http://medical-dictionary.thefreedictionary.com/diplopia (last visited on September 21, 2010).

[2] Hypertropia refers to upward deviation of the visual axis of one eye. *See* The Free Dictionary, available at http://medical-dictionary.thefreedictionary.com/hypertropia (last visited on September 21, 2010).

[3] Exotropia is a condition in which the visual axis of one eye deviates from that of the other. *See* The Free Dictionary, available at http://medical-dictionary.thefreedictionary.com/exotropia (last visited on September 21, 2010).

55). Plaintiff was diagnosed with major depression and panic disorder. (Tr. 155). His GAF score was rated as 53.[4] (Tr. 155).

On December 1, 2004, Plaintiff reported his back pain as 3/10. (Tr. 206). Plaintiff was "encouraged to increase his activities such as walking, using the treadmill or pool therapy." (Tr. 206).

On January 23, 2005, Rom Kriauciunas, Ph.D. completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 162-75). Determining that Plaintiff suffered from anxiety and major depression, the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.04 (Affective Disorders) and Section 12.06 (Anxiety-Related Disorders) of the Listing of Impairments. (Tr. 163-74 ). The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for these particular Listings. (Tr. 172). Specifically, the doctor concluded that Plaintiff experienced mild restrictions in the activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and never experienced extended episodes of decompensation. (Tr. 172).

Dr. Kriauciunas also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 157-60). Plaintiff's abilities were characterized as "moderately limited" in five categories. (Tr. 157-59). With respect to the remaining 15 categories, however, the doctor reported that Plaintiff was "not significantly limited." (Tr. 157-59).

---

[4] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 53 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

On February 14, 2005, Plaintiff reported his back pain as 4-5/10. (Tr. 203).

On July 15, 2005, Plaintiff was examined by Dr. Oren Sagher at the University of Michigan Neurosurgery Clinic. (Tr. 178-80). Plaintiff exhibited 5/5 motor strength and straight leg raising was negative. (Tr. 179). The results of a recent MRI examination revealed a "mild" herniation at L4-5. (Tr. 179). Dr. Sagher determined that Plaintiff's complaints of lumbar pain were "largely due to his obesity and decreased activity." (Tr. 179). The doctor concluded that surgery was unnecessary and that "weight loss and exercise would largely help in alleviating [Plaintiff's] symptoms." (Tr. 179).

On October 7, 2005, Plaintiff reported his back pain as 5/10. (Tr. 196). On February 24, 2006, Plaintiff reported his back pain as 4/10. (Tr. 191). On May 24, 2006, Plaintiff reported his back pain as 3/10. (Tr. 186).

On January 28, 2007, Plaintiff participated in an MRI examination of his lumbar spine, the results of which revealed herniations at L2-3, L3-4, and L4-5, with no evidence of spinal canal stenosis or other acute process. (Tr. 235-37). Treatment notes dated March 20, 2007, reveal that the results of a recent CT myelogram of Plaintiff's lumbosacral spine revealed "no sign of nerve root effacement or impingement." (Tr. 268).

## **ANALYSIS OF THE ALJ'S DECISION**

The ALJ determined that Plaintiff suffered from (1) lumbar degenerative changes and disc herniation, status post laminectomy; (2) double vision; and (3) depressive disorder, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20

C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 17-20). The ALJ concluded that while Plaintiff was unable to perform his past relevant work, there existed a significant number of jobs which he could perform despite his limitations. (Tr. 20-25). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[5] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

---

[5] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

As noted, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work subject to the following limitations: (1) he can lift/carry 20 pounds occasionally and 10 pounds frequently; (2) he cannot use ladders, ropes, or scaffolds; (3) he can occasionally crawl, kneel, crouch, stoop, and climb ramps/stairs; (4) he cannot work in an area with exposure to heights; (5) he cannot carry out complex or detailed instructions; (6) he cannot work at a position requiring regular changes or significant interaction with the public; (7) during an 8-hour workday Plaintiff can sit, stand and walk for 6 hours each; and (8) he requires a sit-stand option. (Tr. 21). The ALJ further observed that Plaintiff is limited to simple unskilled work involving 1-3 step instructions that: (1) does not involve concentration on detailed/precision tasks or multiple/simultaneous tasks; (2) does not necessitate reading, computing, calculating, problem solving or reasoning; (3) requires no more than brief and superficial contact with the public; (4) is routine in nature and does not require changes or adaptations in work settings or duties more than once per month. (Tr. 21). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff could not perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a

9

significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Heather Benton.

The vocational expert testified that there existed approximately 2,200 jobs in the lower peninsula of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 329-30). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006).

        a.        The ALJ Properly Assessed the Medical Evidence

Two of Plaintiff's care providers, Dr. Angell and Dr. Lessard, offered opinions concerning the extent to which Plaintiff is limited by his impairments. The ALJ afforded minimal weight to these particular opinions. Plaintiff asserts that the ALJ erred by failing to accord controlling weight to the opinions expressed by his treating physicians.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, "give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Wilson*, 378 F.3d at 544. In articulating such reasons, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *See* 20 C.F.R. §§ 404.1527, 416.927; *see also*, *Wilson*, 378

F.3d at 544. The ALJ is not required, however, to explicitly discuss each of these factors. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007). Instead, the record must reflect that the ALJ considered those factors relevant to his assessment. *See Oldham*, 509 F.3d at 1258; *Undheim*, 214 Fed. Appx. at 450.

On March 21, 2005, Dr. Angell authored a letter concerning Plaintiff's eye impairment. (Tr. 176). The doctor reported that Plaintiff underwent eye muscle surgery in October 2004 and February 2005. (Tr. 176). Dr. Angell reported that Plaintiff experienced "good clarity of vision" and realized "significant improvement" from his surgeries. (Tr. 176). The doctor also reported that while Plaintiff's depth perception "remains poor. . .single vision can be maintained straight ahead." (Tr. 176). The doctor concluded that Plaintiff's "double vision remains disabling." (Tr. 176). With respect to Dr. Angell's opinion, the ALJ concluded:

> Of course, medical opinions on the ultimate question of disability are not binding on the Commissioner. . .Moreover, where, as here, that opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques, it is not entitled to controlling weight. . .The evidence, including reports from Dr. Angel's (sic) practice discloses that the claimant realized benefit from his surgical interventions. Moreover, while it is clear the claimant has vision-related deficits, he successfully worked with these long-standing problems. Additionally, the claimant is able to operate a motor vehicle, use a computer, work puzzles and perform other activities reflecting visual ability that is not disabling.

(Tr. 23).

As the ALJ noted, the opinion that Plaintiff is "disabled" is entitled to no deference as such is a determination reserved for the Commissioner. *See, e.g., Gant v. Commissioner of Social Security*, 372 Fed. Appx. 582, 584 (6th Cir., Apr. 7, 2010). The ALJ also reasonably relied on Dr. Angell's statements that Plaintiff experienced "good clarity of vision" and realized "significant

improvement" from his surgeries. As the ALJ noted, the medical record does not contain any objective medical evidence to the contrary. Moreover, Plaintiff's reported activities do not support the contention that his vision impairments are disabling in severity. In sum, the ALJ's decision to afford less than controlling weight to Dr. Angell's opinion is supported by substantial evidence.

Plaintiff also faults the ALJ for failing to accord controlling weight to opinions expressed by Dr. Lessard. In a January 24, 2007 report, Dr. Lessard stated that Plaintiff can occasionally lift less than 10 pounds, but can never lift 10 pounds. (Tr. 227). The doctor further stated that if Plaintiff were employed he would need to take 16 breaks, of 15 minutes duration each, during the day. (Tr. 227). The ALJ afforded this opinion "minimal" weight, observing that "[n]o physician to whom Dr. Lessard referred the claimant found the claimant so limited, and such level of dysfunction is not demonstrated in Dr. Lessard's own progress notes or objective findings, or elsewhere in the record." (Tr. 23). As detailed above, the objective medical evidence fails to support the opinion that Plaintiff is limited to such an extreme degree. The ALJ's decision to afford less than controlling weight to Dr. Lessard's opinion is supported by substantial evidence.

b.  The ALJ Properly Assessed Plaintiff's Credibility

At the administrative hearing, Plaintiff testified that he was unable to work due to his vision impairment and "constant" back pain which radiates into his lower extremities. (Tr. 310-14). The ALJ discounted Plaintiff's subjective allegations, finding them to be "not entirely credible." (Tr. 22). Plaintiff asserts that the ALJ failed to accord sufficient weight to his subjective allegations of pain and disability.

13

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531. This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 2004 WL 1745782 at \*6 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 2004 WL 1745782 at \*6 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 2004 WL 1745782 at \*6 (citing *Walters*, 127 F.3d

at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations not to be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

The ALJ examined the record and explained in detail why he found Plaintiff less than credible. As the ALJ correctly observed, Plaintiff's allegations are not supported by the objective medical evidence, as detailed above. Following his back surgery, Plaintiff reported that his condition improved and on numerous occasions rated his back pain as 3 or 4 on a scale of 1-10 which is not consistent with disabling pain. In sum, there exists substantial evidence to support the ALJ's credibility determination.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See*

*Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                                                  Respectfully submitted,


Date: October 6, 2010                        /s/ Ellen S. Carmody
                                                  ELLEN S. CARMODY
                                                  United States Magistrate Judge